UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DWAYNE B. POORMAN,              )
          Plaintiff,           )
                               )
          v.                   )   Civil Action No. 3:12-00168 J
                               )
MICHAEL J. ASTRUE,             )   JUDGE GIBSON
Commissioner of                )
Social Security,               )
          Defendant.           )

### DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff was only thirty-seven years old when he claimed to be disabled due to a below-the-knee amputation and osteomyelitis. Yet the objective medical evidence, the medical opinions of Plaintiff's treating and examining sources, and Plaintiff's significant level of work-related activities reveal his physical impairments were not disabling.

Plaintiff underwent a successful below-the-knee amputation that eliminated his chronic leg infection and significantly reduced his pain.  Plaintiff no longer takes any pain medication. Through prosthetic rehabilitation, Plaintiff learned to ambulate effectively with a prosthesis and retained a full range of motion, full motor strength, normal reflexes, and normal sensation in his residual lower limb.  After being discharged from rehabilitation, Plaintiff resumed the operation of his small marine repair and parts center and worked up to forty-five hours per week.  Plaintiff also reported to his doctor he could carry heavy engines without difficulty.  Notably, Plaintiff's treating

and examining sources opined Plaintiff had no limitation in his ability to sit during the workday.

The administrative law judge (ALJ) reasonably accounted for all of Plaintiff's credibly established functional limitations in restricting Plaintiff to performing a limited range of sedentary work.  Thus, substantial evidence supports the ALJ's finding Plaintiff was not disabled.

## ISSUES

1.   Does substantial evidence support that Plaintiff did not meet or medically equal the criteria of Listings 1.05B and 1.08?

2.   Does substantial evidence support the ALJ's finding that Plaintiff could perform a limited range of sedentary work and thus was not disabled?

## STATEMENT OF THE CASE

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act).  42 U.S.C. §§  401-433, 1381-1383f.  Plaintiff protectively filed for DIB on February 4, 2009, and SSI on January 14, 2009, alleging disability due a below-the-knee leg amputation, osteomyelitis, and depression since November 30, 2008 (Tr. 57, 103, 107,

486-89). Plaintiff was found not disabled initially (Tr. 29-33, 479-83, 491-95). On June 28, 2010, Plaintiff, who was represented by counsel, and an impartial vocational expert appeared and testified at the hearing held by an ALJ (Tr. 510-557).

On September 3, 2010, the ALJ issued a decision finding Plaintiff was not disabled (Tr. 15-24). The ALJ determined Plaintiff had the following severe impairments: below-the-knee amputation and osteomyelitis (Tr. 17-18), but none of the impairments, alone or in combination, met or medically equaled one of the listed impairments[1] (Tr. 18-19). Then, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform a limited range of sedentary work as defined by 20 C.F.R. §§ 404.1597(a) and 416.967(a) (Tr. 19). To account for Plaintiff's physical functional limitations, the ALJ limited Plaintiff to lifting and carrying up to ten pounds, standing/walking for two hours per day, no pushing and pulling with the left lower extremity, occasional climbing of ramps and stairs, no balancing, kneeling, crouching, crawling, and climbing of ladders, ropes,

---

[1] In determining whether an individual is disabled, the Commissioner applied a five-step sequential evaluation process, which considers whether an individual (1) is working; (2) has a severe impairment; (3) has an impairment that meets or medically equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520, 416.920.

and scaffolds (Tr.19).  Plaintiff also must avoid exposure to
extreme heat, cold, humidity, and wetness, and exposure to
hazardous conditions such as uneven surfaces (Tr. 19).  Based on
the evidence of record, including the vocational expert's
testimony, the ALJ determined Plaintiff remained capable of
performing other work that exists in significant numbers in the
national economy, including jobs as an order clerk, addresser,
and table worker (Tr. 22).

Thereafter, the Appeals Council denied Plaintiff's request
for review, rendering the ALJ's decision the final decision of
the Commissioner (Tr. 6-9).  See 20 C.F.R. §§ 404.981, 416.1481.
Having exhausted his administrative remedies, Plaintiff now seeks
judicial review of the Commissioner's final decision denying his
claim for DIB and SSI under the Act.

## STATEMENT OF FACTS

### A.   Plaintiff Actively Managed His Own Small Business During the Relevant Period.

Plaintiff was 37 years old at the alleged onset of
disability and considered a "younger person" under the
Commissioner's regulations (Tr. 57, 103).  See 20 C.F.R. §§
404.1563(c), 416.963(c) (2012) (defining a younger person as
someone who is under age 50 and, generally, whose age will not
seriously affect his ability to adjust to other work).  He has a
high school degree and past relevant work as machine maintenance
worker (Tr. 66-71, 109-110, 122-27).

Prior to and during the relevant period, Plaintiff owned and operated a small marine repair service and parts center (Tr. 403, 450, 515-16). For more than a year and a half prior to the alleged onset of disability, Plaintiff stated he could work with some limitations and reported working 12-to-16 hour days through the end of November 2008 (Tr. 105, 108). Plaintiff temporarily closed his business in December 2008 for about six months to pursue amputation and rehabilitation (Tr. 108, 403, 517). Plaintiff testified he used crutches and a wheelchair prior to receiving a prosthesis (Tr. 526). In September 2009, Plaintiff reported he continued to work at his marine repair shop and he was able to carry heavy engines without difficulty (Tr. 461). At the hearing in June 2010, Plaintiff testified he works up to 35-to-45 hours per week (Tr. 515, 528).

During the relevant time period, Plaintiff did paperwork for his business, returned his customers' calls, paid bills, spent time at his parent's house, used the computer, read magazines, drove a car, rode in vehicles with family and friends, dressed and showered without assistance, occasionally prepared small meals, and dusted (Tr. 132-35). Plaintiff can finish what he starts, follows instructions well, handles stress well, gets along with authority figures well, and handles changes in routine well (Tr. 137).

B.   **Plaintiff Experienced Complications of a Past Leg Injury and Underwent a Successful Below-the-Knee Left Leg Amputation**.

More than three years prior to the alleged onset date of November 30, 2008, Plaintiff suffered a trauma to his left anterior shin in a work-related accident in 2005 (Tr. 192-93, 411, 519).  At that time, there was no apparent fracture, but he had persistent wound problems that eventually developed into a chronic wound infection and osteomyelitis of the left tibia (Tr. 192, 375, 411, 430).  Plaintiff underwent numerous courses of antibiotics and surgeries for debridement and flap repairs of his left lower limb (Tr. 375, 403, 411).  In August 2008, Plaintiff had a breakdown in his wound after a year and a half of being fully healed and continued with his past course of treatment (Tr. 306).  In December 2008, after the alleged onset of disability, Plaintiff was hospitalized due to acute osteomyelitis, and treated by Karin Beyers, M.D., an internal medicine and infectious disease specialist (Tr. 319-23).  Plaintiff then consulted with Ivan Tarkin, M.D., an orthopedic surgeon, regarding limb salvage and reconstruction strategies (Tr. 317, 375).  Plaintiff decided to have a below-the-knee amputation because it was a more definitive solution than reconstructive surgery and the most direct path to a normal functioning life and career (Tr. 317, 375).

In January 2009, Plaintiff's lower left leg was amputated below the knee and the entire area of the infection was removed

(Tr. 375-77, 411).  In February 2009, Plaintiff underwent
irrigation and debridement of his residual limb and application
of a VAC dressing (Tr. 466).  Although Plaintiff had some
complications due to persistent wound drainage exacerbated by
three falls, the symptoms that Plaintiff experienced before the
surgery, such as night sweats and generalized malaise, had
resolved (Tr. 411).  Plaintiff stated the leg amputation had
reduced his pain, and his pain was controlled by medication (Tr.
140-41).

**C.**   **Plaintiff Learned to Ambulate Effectively with a Lower Leg**
         **Prosthesis**.

Following the surgery, Dr. Tarkin described Plaintiff's
prognosis as "good" and prescribed prosthetic rehabilitation (Tr.
402, 455).  Michael Munin, M.D., a specialist in prosthetic
rehabilitation, determined Plaintiff was an excellent candidate
for prosthetic rehabilitation training (Tr. 402).

In February 2009, Dr. Munin's functional examination of
Plaintiff revealed he was currently an active community ambulator
who was using Lofstrand crutches and had fallen three times (Tr.
402).  Plaintiff had a full range of motion in his left hip and
left residual knee, normal reflexes, intact sensation, and full
motor strength in bilateral hip flexion and knee extension and
flexion (Tr. 403).  Although Plaintiff reported swelling was
worse with prolonged car travel, Plaintiff stated his pain was
much improved overall following the surgery (Tr. 403).  Plaintiff

reported his phantom limb pain/sensation level equaled a three out of an ascending scale to ten (Tr. 402).  Dr. Munin recommended Plaintiff continue to take Lyrica for phantom limb pain (Tr. 404).  Although Plaintiff could not start inpatient rehabilitation right away, Dr. Munin stated Plaintiff's prognosis was excellent with full return to work potential (Tr. 404).

Three months after Plaintiff's surgery, on March 16, 2009, Dr. Beyers completed a medical source statement regarding Plaintiff's ability to perform work-related physical activities (Tr. 409-410).  Dr. Beyers concluded Plaintiff could only lift and carry 10-to-20 pounds from a sitting position, could only walk or stand with a prosthesis due to his amputation, had no limitation on his ability to sit, had a limited ability to push and pull, had difficulty bending, kneeling, stooping, crouching, balancing, and climbing, and had no other physical or environmental limitations (Tr. 409).

In May 2009, Dr. Munin concluded Plaintiff was ready to resume prosthetic rehabilitation (Tr. 466-67).  Although Plaintiff reported a couple of falls, he denied phantom limb pain and residual limb pain, and he stopped taking pain medication (Tr. 466).  Plaintiff had excellent residual limb length, good range of motion for both flexion and extension, and full motor strength (Tr. 467).  Dr. Munin recommended Plaintiff undergo inpatient rehabilitation and wrote a detailed prescription for a

prosthetic that would allow Plaintiff to perform work-related activities needed to operate his marine repair business (Tr. 467).  As of June 2, 2009, Plaintiff's current functional level was K3, which is defined as the ability or potential to ambulate with variable cadence and perform activities beyond simple locomotion and is the second highest function level on an ascending scale from K0 to K4 (Tr. 451).  Plaintiff's expected functional level was K4, which is the ability or potential for activities including high impact, stress, or energy levels, and is the highest functional level (Tr. 451).  In June 2009, Plaintiff was fitted with a below-the-knee prosthetic and underwent inpatient rehabilitation (Tr. 447-54).  Subsequently, Plaintiff was discharged from rehabilitation after three weeks of outpatient therapy (Tr. 461).

In September 2009, Plaintiff returned to Dr. Munin for a follow-up appointment (Tr. 461).  Since being released from therapy, Plaintiff reported wearing his prosthesis for 10-to-14 hours per day (Tr. 461).  Plaintiff reported occasional mild phantom limb pain at the big toe, but denied significant residual limb pain, except for mild soreness at the distal tibia (Tr. 461-62).  Plaintiff denied any falls (Tr. 461).  Plaintiff reported continuing to work at his marine repair shop and he was able to carry heavy engines without difficulty (Tr. 461).  A physical examination revealed Plaintiff's left residual limb had

full range of motion, good mobility of skin to bone, and a healed scar without obvious blistering or ulceration (Tr. 462). Dr. Munin concluded Plaintiff was doing well, but he needed a new prosthesis due to expected residual limb shrinkage and a refresher course in physical therapy to reduce trunk lean in his gait (Tr. 462). Towards the end of September 2009, Plaintiff was fitted with the new prosthesis (Tr. 457).

In October 2009, Plaintiff returned to Dr. Munin for a routine, follow-up appointment (Tr. 457). Dr. Munin's examination revealed no ulceration, excellent left knee range of motion, great strength, overall good mobility of skin to bone, and a "good" gait (Tr. 457). Dr. Munin stated Plaintiff's phantom limb pain had improved and he was off all pain medication (Tr. 457-58). Plaintiff also testified at the hearing the he does not take any pain medication (Tr. 531). Plaintiff had unexpected shrinkage of the residual limb after the casting of the new socket, and Dr. Munin ordered a recast of the socket with a few other adjustments to the prosthesis to improve usage (Tr. 458). As of October 15, 2009, Plaintiff's functional mobility level was K3 plus and his gait was "excellent" (Tr. 434).

**D.    A Consultative Examination Reveals a "Really Healthy"
Amputation Site and No Functional Limitations Precluding a
Limited Range of Sedentary Work**.

In January 2010, Pawan Gupta, M.D., performed a consultative
examination of Plaintiff (Tr. 426-28).  Dr. Gupta stated
Plaintiff was not in acute distress (Tr. 427).  Dr. Gupta stated
Plaintiff had a left mid-tibial amputation and was wearing a
prosthesis on his left leg (Tr. 427).  Dr. Gupta noted the
"stump" looked "really healthy" and there was no erythema or open
areas (Tr. 427).  Plaintiff reported to Dr. Gupta that the left
leg prosthesis "occasionally" caused blisters on the stump and he
had phantom limb pain. (Tr. 426-27).  Dr. Gupta also completed a
form assessing Plaintiff's ability to perform work-related
activities (Tr. 429-32).  Although Dr. Gupta concluded
Plaintiff's ability to walk, stand, climb, kneel, crouch, stoop,
balance, and crawl were affected by his amputation, Plaintiff had
no limitations on his ability to sit, feel, handle, reach, push
and pull (Tr. 430).  Dr. Gupta also concluded Plaintiff's
impairment did not cause any environmental restrictions (Tr.
431).

## STANDARD OF REVIEW

The Act limits judicial review of the Commissioner's final
decision.  42 U.S.C. §§ 405(g), 1383(c).  If substantial evidence
supports the Commissioner's decision, this Court must affirm.
42 U.S.C. §§ 405(g), 1383(c); <u>Richardson v. Perales</u>,

402 U.S. 389, 390, 401 (1971).  Substantial evidence is such

evidence as a reasonable mind might accept to support a

conclusion, more than a mere scintilla but somewhat less than a

preponderance.  Perales, 402 U.S. at 401.

**ARGUMENT**

**A.  Substantial Evidence Supports that Plaintiff Did Not Meet or Equal 1.05B and 1.08 of the Listing of Impairments.**

Plaintiff's physical impairments, singly or in combination,

did not meet or medically equal the criteria of Listings 1.05B

relating to amputations and 1.08 relating to soft tissue injuries

(Tr. 18-19).  20 C.F.R. §§ 404.1525(a), 416.925(a); Zebley, 493

U.S. at 532.  The Listings are a regulatory device used to

streamline the decision process by identifying those claimants

whose impairments are so severe that they are presumed to be

disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); Sullivan v.

Zebley, 493 U.S. 521, 532 (1990).  The Listings define

impairments that would prevent an adult from performing any

gainful activity, not just substantial gainful activity.  Zebley,

493 U.S. at 532.  The medical criteria defining the Listings are

appropriately set at a higher level than the statutory standard

for disability.  Id.  If the impairment is not one that is

conclusively presumed to be disabling, the sequential evaluation

process proceeds to the fourth step.  Bowen v. Yuckert, 482 U.S.

137, 146, n.5 (1987).

The claimant has the burden of proving a presumptively disabling impairment found in the Listings.  Id.  To meet this burden, the claimant must prove that he meets **all** of the requirements of a Listing.  Zebley, 493 U.S. at 530.  A claimant who meets only some of the requirements of the Listing, "no matter how severely, does not qualify."  Id.

Plaintiff does not meet the criteria Listing 1.05B that requires Plaintiff to have an amputation of "[o]ne or both lower extremities at or above the tarsal region, with stump complications resulting in a medical inability to use a prosthetic device to ambulate effectively, as defined by 1.00B2b, which have lasted or are expected to last for at least 12 months . . ."  20 C.F.R. pt 404, Subpt. P, App. 1, § 1.05B.  Although Plaintiff's left lower leg was amputated above the tarsal region, the objective medical evidence reveals Plaintiff did not have stump complications resulting in a medical inability to use his prosthesis to ambulate effectively (Tr. 434, 451, 457-58, 461-62).  Although Plaintiff reported he occasionally got blisters from his prosthesis, physical examinations of Plaintiff consistently revealed a healthy residual limb without any sign of swelling, blisters, or ulcerations (Tr. 426-27, 457-58, 461-62).  Plaintiff also had a full range of motion, great strength, normal reflexes, and intact sensation (Tr. 403, 457, 461-62, 467).  No physician concluded Plaintiff had a "medical inability" to use

-13-

his prosthesis or that he should stop wearing his prosthesis.  20
C.F.R. pt 404, Subpt. P, App. 1, § 1.05B.  Rather, Plaintiff's
doctor altered the prescription for the structure of the
prosthesis to improve the fit and maximize Plaintiff's level of
function (Tr. 458, 462, 467).

    Also, Plaintiff does not meet the requirements of Listing
1.05B because he failed to prove that his impairment resulted in
an inability to ambulate effectively as defined in 1.00B2b.
See 20 C.F.R. pt. 404., subpt. P, app. 1, § 1.00B2b.  The
inability to ambulate effectively means an extreme limitation of
the ability to walk.   Id.  The examples of ineffective ambulation
provided in section 1.00B2b are the inability to walk without the
use of a walker, two crutches, or two canes; the inability to
walk a block at reasonable pace or on rough or uneven surfaces;
and the inability to carry out routine ambulatory activities.
Id.  Plaintiff testified he did not use crutches or a wheelchair
after he received his prosthetic leg (Tr. 526).  Plaintiff stated
he wears his prosthesis 10-to-14 hours per day (Tr. 461).
Although Plaintiff testified he has some difficulty walking on
uneven surfaces, the medical records reveal Plaintiff had
excellent gait and had a high level of mobility (Tr. 402, 434,
451, 461, 457).  Less than a year after his surgery, Plaintiff
reported he had no difficulty carrying heavy engines at work
(Tr. 461).  Plaintiff also had no falls after he received his

-14-

prosthesis (Tr. 457-58, 461).  Therefore, the medical evidence supports a finding that Plaintiff could ambulate effectively with his prosthesis, and Plaintiff fails to satisfy all of the strict requirements of Listing 1.05B.

Nor can Plaintiff establish that he met or equaled Listing 1.08.  20 C.F.R. pt 404, subpt. P, app. 1, § 1.08.  To qualify under Listing 1.08, Plaintiff must establish that he has a "[s]oft tissue injury (e.g., burns) of an upper and lower extremity, truck, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function and was not restored or expected to be restored within 12 months of onset . . ." Id.  The Commissioner's regulations define "functional loss" as the inability to ambulate effectively. [2]  20 C.F.R. pt 404, subpt. P, app. 1, § 1.00B2(a).  As set forth in detail above, the medical evidence reveals that Plaintiff could ambulate effectively with his prosthesis within twelve months of the alleged onset of disability (Tr. 434, 451, 457-58, 461-62).  Plaintiff alleged he

---

[2] Loss of function is also defined as the inability to perform fine and gross movements effectively on a sustained basis.  20 C.F.R. pt 404, subpt. P, app. 1, § 1.00B2(a).  The inability to perform fine and gross movements effectively is defined as the extreme loss of function of both upper extremities that leaves a claimant unable to independently initiate, sustain, or complete activities.  20 C.F.R. pt 404, subpt. P, app. 1, § 1.00B2(b)(c).  Plaintiff has not alleged and the medical evidence does not reveal that Plaintiff had any functional loss of his upper extremities.

became disabled on November 30, 2008, and the medical records show Plaintiff was ambulating and able to move heavy engines by at least September 2009 (Tr. 103, 107, 461).

Plaintiff also failed to present evidence that combination of his impairments met or equaled a listed impairment by presenting medical findings equal in severity to all the criteria for the one most similar listed impairment.  20 C.F.R. §§ 404.1526, 416.926; <u>Zebley</u>, 493 U.S. at 531.  Accordingly, the Commissioner requests that the Court affirm the ALJ's decision.

**B.**   **<u>Substantial Evidence Supports the ALJ's RFC Determination and Finding of Non-Disability</u>**.

The RFC is the most work-related activities an individual could do despite the functional limitation imposed by his physical impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  As the fact finder, the ALJ had the duty to make an RFC assessment. 20 C.F.R. §§ 404.1546(c), 416.946(c).  The RFC is based upon all the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).

Here, in accordance with the Commissioner's regulations, the ALJ made an independent assessment of Plaintiff's RFC based upon a careful review of the entire record and reasonably addressed all of Plaintiff's credibly established functional limitations (Tr. 19-22).  The ALJ reasonably limited Plaintiff to performing

-16-

a reduced range of sedentary work – the least strenuous type of physical work recognized by the Commissioner's regulations.  See 20 C.F.R. §§ 404.1567, 416.967.  Specifically, the ALJ limited Plaintiff physically to lifting and carrying up to ten pounds, walking and standing only two hours per day, no pushing and pulling with his left lower extremity, occasional climbing of ramps and stairs, no balancing, kneeling, crouching, crawling, and climbing of ladders, ropes, and scaffolds (Tr. 23).  The ALJ's thorough analysis of the evidence, including the objective medical evidence, the medical opinion evidence, and Plaintiff's substantial work activities, supports his conclusions.

The ALJ properly relied upon the objective medical evidence in determining that Plaintiff could perform a limited range of sedentary work.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Although Plaintiff's condition necessitated a below-the-knee amputation and period of rehabilitation, Plaintiff did not experience a disabling level of severity of impairments for 12 continuous months in the relevant period (Tr. 434, 451, 457-58, 461-62).  20 C.F.R. §§ 404.1509; 416.909; Walton v. Barnhart, 535 U.S. 212, 225 (2002) (durational requirement requires that impairment remain at a disabling level of severity for 12 continuous months).  Rather, Plaintiff, a younger individual under the Act, improved significantly following the amputation of his left lower leg in January 2009 (Tr. 434, 451, 457-58, 461-

-17-

62).  Although Plaintiff experienced some complications relating
to drainage, the surgery successfully eliminated the infection of
the wound and bone (Tr. 375-77, 411).  Plaintiff's pain level was
significantly reduced after surgery, and he has taken no pain
medication since October 2009 (Tr. 140-41, 403, 466, 461-62,
531).  Only three months after Plaintiff's surgery and before he
received his prosthesis, Plaintiff was an active community
ambulator (Tr. 402).  After Plaintiff received his prosthesis and
completed rehabilitation, and his mobility continued to improve,
he had no falls, and he had a good-to-excellent gait (Tr. 434,
451, 457-58, 461-62).  Less than a year after his surgery,
Plaintiff reported to his doctor that he continued to work and
could move heavy engines without difficulty (Tr. 461).

    In addition, the ALJ's RFC assessment is supported by and
consistent with the medical opinions of Plaintiff's treating and
examining sources (Tr. 22).  20 C.F.R. §§ 404.1545(a)(3),
416.945(a)(3).  Although Dr. Beyers indicated Plaintiff's ability
to walk and stand was limited without a prosthesis and he would
have difficulty bending, kneeling, stooping, crouching,
balancing, and climbing, she placed no limitation on his ability
to sit, push, or pull (Tr. 409-10).  She also placed no other
physical or environmental limitations on Plaintiff (Tr. 409-10).
After Plaintiff obtained his prosthesis, Dr. Gupta concluded that
Plaintiff's ability to walk, stand, climb, kneel, crouch, stoop,

balance, and crawl were affected by his amputation, but that Plaintiff had no limitation in his ability to sit, push, and pull (Tr. 430). Dr. Beyer's and Dr. Gupta's opinions therefore are consistent with the RFC for a limited range of sedentary work because neither doctor placed any restriction on Plaintiff's ability to sit during the workday and Plaintiff's prosthesis enabled him to walk and stand for part of the workday.

Plaintiff's significant work activities also support that he remained capable of performing a limited range of sedentary work. Although Plaintiff temporarily closed his business Plaintiff to pursue surgery and prosthetic rehabilitation, Plaintiff resumed working six months after his surgery around June 2009 (Tr. 108, 403, 517). In fact, as of September 2009, Plaintiff reported to his doctor he continued to work and he could carry heavy engines without difficulty (Tr. 461). At the hearing in June 2010, Plaintiff stated he was working up to 35-to-45 hours per week (Tr. 515, 528). During the relevant time period, Plaintiff also did paperwork for his business, returned his customers' calls, paid bills for his business, spent time at his parent's house, used the computer, read magazines, drove a car, rode in a vehicles with family and friends, dressed and showered without assistance, occasionally prepared small meals, and dusted (Tr. 132-35). Plaintiff's substantial activities of daily living

undermine his allegations of disability and support that Plaintiff could perform within the limits of his RFC assessment.

Given the above evidence, the ALJ accounted for all of Plaintiff's credibly-established functional limitations in the RFC assessment.  Accordingly, the Court should affirm the ALJ's decision because substantial evidence supports that Plaintiff's impairments do not preclude him from a limited range of sedentary work.

## CONCLUSION

For the foregoing reasons, and those stated in the ALJ's decision, substantial evidence supports the ALJ's finding of non-disability, and the ALJ's decision should be affirmed.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney


s/ Stephanie L. Haines
STEPHANIE L. HAINES
Assistant U.S. Attorney
319 Washington Street, Room 200
Johnstown, Pennsylvania 15901
Phone: (814) 533-4547
Fax:  (814) 533-4545
Email: stephanie.haines@usdoj.gov
WV 9249

Counsel for Defendant,
Commissioner of Social
Security Administration

OF COUNSEL:

Eric P. Kressman
  Regional Chief Counsel, Region III
Antonia M. Pfeffer
  Assistant Regional Counsel
Office of the General Counsel
Social Security Administration