IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DWAYNE B. POORMAN,            )
                              )
            Plaintiff,        )
                              )
      v.                      )
                              )   Civil Action No. 12-168J
CAROLYN W. COLVIN,            )
COMMISSIONER OF               )
SOCIAL SECURITY,              )
                              )
            Defendant.        )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 10th day of September, 2013, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 6) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 11) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those

findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed his applications for DIB and SSI on January 14, 2009, alleging disability beginning on November 30, 3008, due to below the knee leg amputation, osteomyelitis and depression. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing on June 28, 2010. On September 3, 2010, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on June 15, 2012, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff, who has a high school education, was 37 years old on his alleged onset date of disability, and is classified as a younger individual under the regulations. 20 C.F.R. §§404.1563(c), 416.963(c). Plaintiff has past relevant work experience as a marine service center owner/operator and machine maintenance worker, but he has not engaged in substantial gainful activity at any time since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. Although the medical evidence established that plaintiff suffers from the severe impairments of left leg below the knee amputation and osteomyelitis,[1] those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform sedentary work with a number of additional limitations. Plaintiff is limited to walking and standing two hours during an eight hour workday, and he must avoid pushing and pulling with the left lower extremity. In addition, plaintiff is limited to only occasional climbing of ramps and stairs, and he must avoid balancing, kneeling, crouching, crawling and climbing ladders, ropes and scaffolds. Finally, plaintiff must avoid exposure to extreme heat, cold, humidity and wetness, as well as hazardous conditions such as uneven surfaces (collectively, the "RFC Finding").

As a result of these limitations, the ALJ determined that

---

[1] The record indicates that plaintiff originally injured his left shin in a work-related accident. (R. 192-93, 518-19). He subsequently developed a chronic wound infection and osteomyelitis of the left tibia. (R. 375, 411). Plaintiff underwent numerous surgeries to repair his left lower leg, but that course was unsuccessful and his left leg was amputated below the knee in January 2009. (R. 375-77, 403, 411). As discussed in more detail below, plaintiff was fitted with a prosthetic leg and underwent rehabilitation in June 2009. By September 2009, plaintiff's rehabilitation specialist reported that he was doing well and he was continuing to work at his marine engine shop.

plaintiff could not perform his past relevant work. However, based upon the vocational expert's testimony, the ALJ concluded that plaintiff's vocational factors and residual functional capacity enable him to perform other work that exists in significant numbers in the national economy, such as an order clerk, addresser or table worker. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has promulgated regulations that incorporate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must determine: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and

residual functional capacity.[2] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff challenges the ALJ's findings at steps 3 and 5 of the sequential evaluation process. At step 3, plaintiff argues that the ALJ erred by concluding that his left leg impairment does not meet or equal listings 1.05B, 1.06B and/or 1.08. Further, plaintiff claims the ALJ's step 5 finding that he retains the residual functional capacity to perform work that exists in the national economy is not supported by substantial evidence. The court finds that these arguments lack merit.

Plaintiff first challenges the ALJ's findings at step 3 of the sequential evaluation process. At step 3, the ALJ must determine whether the claimant's impairments meet or equal one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education or work experience, from performing any gainful activity. 20 C.F.R. §§404.1525(a), 416.925(a); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000). "If the impairment is equivalent to a listed impairment, then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

---

[2] Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider his ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(4), 416.945(a)(4).

It is the ALJ's burden to identify the relevant listed impairment in the regulations that compares with the claimant's impairment. Burnett, 220 F.3d at 120 n.2. However, it is the claimant's burden to present medical findings that show his impairment matches or is equivalent to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). In determining whether the claimant's impairment meets or equals a listed impairment, the ALJ must set forth the reasons for his decision. Burnett, 220 F.2d at 119.

According to plaintiff, the ALJ erred in failing to find that he meets listings 1.05B, 1.06B and/or 1.08. Contrary to plaintiff's position, a review of the record establishes that the ALJ employed the appropriate analysis in arriving at his step 3 finding. The ALJ analyzed the medical evidence of record and found that plaintiff suffers from left leg below the knee amputation and osteomyelitis, which are severe impairments. However, the ALJ determined that plaintiff's impairments, even when considered in combination, do not meet or equal any listed impairment. The ALJ's decision indicates that he considered listing 1.05B relating to amputation of a lower extremity, but he found that plaintiff's condition does not satisfy all the criteria of that listing or any other listing contained in 1.00 covering the musculoskeletal system. (R. 18-19). The ALJ then explained his reasoning as to why plaintiff's impairments do not meet or equal any listing. (R. 19).

The ALJ satisfied his burden; however, plaintiff failed to

sustain his burden of showing that his leg impairment and amputation meets, or equals, listings 1.05B, 1.06B or 1.08.

First, to meet listing 1.05B, a claimant must have an amputation of a lower extremity at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively which has lasted or is expected to last for at least 12 months. Although plaintiff's left lower leg was amputated above the tarsal region, the medical evidence shows that he did not have stump complications resulting in an inability to use his prosthesis to ambulate effectively.

The inability to ambulate effectively is defined in §1.00B.2.b(1) as an extreme limitation of the ability to walk meaning that an impairment interferes very seriously with an individual's ability to initiate, sustain or complete activities. Examples of ineffective ambulation include, <u>inter alia</u>, the inability to walk without the use of a walker, two crutches or two canes and the inability to walk a block at a reasonable pace on rough or uneven surfaces. See §1.00B.2.b(2).

In this case, plaintiff's left leg was amputated below the knee in January 2009. (R. 375-77, 411). In June 2009, plaintiff was fitted with a prosthetic leg and underwent rehabilitation. (R. 447-454). Dr. Michael Munin, a rehabilitation specialist, noted in September 2009 that plaintiff was wearing his prosthetic leg 10-14 hours per day, he was doing well, he had full left knee range of motion and good mobility of skin to bone, but he had occasional phantom limb pain. (R. 461-62). As of September 2009,

plaintiff reported to Dr. Munin that "[h]e continues to work at his marine engine shop, and he is able to carry heavy engines without difficulty." (R. 461). In October 2009, Dr. Munin observed that plaintiff had no skin ulceration, great strength and overall good mobility of skin to bone, that his gait was good and that he was off all medications for phantom limb pain. (R. 457).

There is no indication that plaintiff had any stump complications which resulted in an inability to use his prosthetic leg to ambulate effectively. Indeed, plaintiff testified that he did not use crutches or a wheelchair after he received his prosthetic leg. (R. 526). Although plaintiff testified that he had some difficulty walking on uneven surfaces, Dr. Munin did not identify any such limitation in his records, but rather stated that plaintiff had a good gait. Accordingly, the medical evidence supports the ALJ's finding that plaintiff does not meet listing 1.05B because he could ambulate effectively with his prosthetic leg within 12 months of the alleged onset date of disability.

Plaintiff's assertion that he meets listing 1.06B[3] and/or 1.08[4] also is without merit because those listings likewise require that a claimant have an inability to ambulate effectively. As discussed above, plaintiff was able to ambulate effectively with

---

[3] Listing 1.06B addresses fracture of the tibia and requires an inability to ambulate effectively and return to effective ambulation does not occur or is not expected to occur within 12 months.

[4] Listing 1.08 deals with a soft tissue injury of a lower extremity under continuing surgical management directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset.

his prosthetic leg within 12 months of his alleged onset date of disability.[5] For this reason, and those previously discussed, the court finds that the ALJ properly determined at step 3 that plaintiff does not meet all of the criteria of any listed impairment.

Plaintiff next argues that the ALJ erred in assessing his credibility, thus his conclusion at step 5 that plaintiff can perform other work that exists in the national economy is not supported by substantial evidence. Plaintiff also contends that his work activity is not inconsistent with a finding of disability, and that the ALJ's RFC Finding is flawed because it does not account for the episodic nature of his impairment. These arguments are without merit.

First, regarding the ALJ's credibility analysis, a claimant's complaints and other subjective symptoms must be supported by objective medical evidence. 20 C.F.R. §§404.1529(c), 416.929(c); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). An ALJ may reject the claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony.

---

[5] Plaintiff asserts that listings 1.06B and 1.08 are relevant to the time period before his leg was amputated and now claims that the 12-month durational period should have begun sometime in 2006. Plaintiff presumably makes this assertion because the evidence of record reveals that he could ambulate effectively with his prosthetic leg within 12 months of his alleged onset date of disability of November 30, 3008, thus he does not satisfy the durational requirement of any listing he now claims to meet. This is not a case in which the ALJ rejected plaintiff's alleged onset date of disability and selected a date less favorable to plaintiff. Rather, the ALJ adopted November 30, 2008, as the alleged onset date of disability, which is the date plaintiff himself chose. Plaintiff never requested that the ALJ amend his alleged onset date, nor did he raise this issue before the Appeals Council. If plaintiff wished to amend or challenge his alleged onset date, he should have done so during the administrative proceedings, not before the district court in the first instance, thus the argument is not properly raised here.

Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). In this case, the ALJ properly analyzed plaintiff's subjective complaints, and he explained why he found plaintiff's testimony not entirely credible.

In evaluating plaintiff's credibility, the ALJ complied with the appropriate regulations and considered all of the relevant evidence in the record, including plaintiff's own statements about his limitations, his daily activities, the extent and nature of his treatment, the medical evidence and the opinions of physicians who treated and examined him. See 20 C.F.R. §§404.1529(c)(1) - (c)(3), 419.929(c)(1) - (c)(3); Social Security Ruling 96-7p. The ALJ then considered the extent to which plaintiff's alleged functional limitations reasonably could be accepted as consistent with the evidence of record and how those limitations affect his ability to work. 20 C.F.R. §§404.1529(c)(4), 419.929(c)(4). The ALJ determined that the objective evidence is inconsistent with plaintiff's allegation of total disability. Accordingly, the ALJ determined that plaintiff's testimony regarding the pain and other limitations caused by his condition was not entirely credible. (R. 21). This court finds that the ALJ adequately explained the basis for his credibility determination in his decision, (R. 20-22), and is satisfied that such determination is supported by

substantial evidence.[6]

Plaintiff also argues that his work activity is not inconsistent with a finding of disability, and that the ALJ's RFC Finding is flawed because it does not account for the episodic nature of his impairment. Although plaintiff admits he is able to work at times, he contends that he is not able to do so on a consistent daily basis.

The ALJ noted in his decision that plaintiff testified he could work approximately 35 hours per week at the boat repair business he owned depending on how his leg felt. (R. 21, 515, 528). In connection with his work activity, plaintiff reported to Dr. Munin that he could carry heavy engines without difficulty. (R. 21, 461).

The Regulations provide that work a claimant has done after his alleged onset date of disability may be probative of his ability to engage in substantial gainful activity. See 20 C.F.R. §§404.1571, 416.971 ("[e]ven if the work [a claimant has] done was

---

[6]Plaintiff also critiques the ALJ's credibility analysis by arguing that the ALJ should have given his testimony substantial credibility based on his prior record of steady employment. While it is true that the testimony of a claimant with a long work history may be given substantial credibility concerning his claimed limitations, see Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979), work history is only one of many factors an ALJ may consider in assessing a claimant's subjective complaints. 20 C.F.R. §§404.1529(c)(3), 419.929(c)(3). A claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility. See Christl v. Astrue, 2008 WL 4425817, *12 (W.D.Pa. September 30, 2008).
    Here, the ALJ clearly was aware of plaintiff's work history and referred to it in his decision when he determined that plaintiff could not perform his past relevant work. (R. 22). It likewise is clear from the ALJ's decision that he considered the record as a whole in assessing plaintiff's credibility as discussed herein. An exemplary work history in and of itself is insufficient to overcome the substantial evidence supporting the ALJ's credibility determination in this case.

not substantial gainful activity, it may show that [he was] able to do more work than [he] actually did."). Therefore, plaintiff's work activity was one factor, among many others, that the ALJ properly considered in finding that he has the residual functional capacity to perform a range of sedentary work. Id. (explaining that all medical and vocational evidence of record will be considered in determining whether a claimant has the ability to engage in substantial gainful activity).

In conclusion, after carefully and methodically considering all of the medical evidence of record, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Therefore, the decision of the Commissioner must be affirmed.

*[signature]*
Gustave Diamond
United States District Judge

cc: David M. Axinn, Esq.
    106 Hollidaysburg Plaza
    Duncansville, PA 16635

    Stephanie L. Haines
    Assistant U.S. Attorney
    319 Washington Street
    Room 224, Penn Traffic Building
    Johnstown, PA 15901